(65 App. Div. 361.)

HILL v. STARIN.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

1. PERSONAL INJURIES—COMMON CARRIERS—DUTY TO PASSENGERS—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Plaintiff was a passenger on a barge towed by a tug, which were owned and operated by defendant. The tug was attached to the barge by a hawser passed through a chock in the bow of the barge, and fastened to a cleat in the bow deck floor. Plaintiff was on the bow deck, when the hawser tore away the chock and side rail, and either broke or slipped from the cleat, catching plaintiff's leg, and cutting it off. Plaintiff's evidence tended to show that the hawser was insecurely fastened, and too long; that the tow turned nearly at right angles, and when the hawser became taut the barge was tipped so that furniture slid along the deck, and people fell down. Defendant's evidence tended to show that the hawser was properly attached, and did not break; that the chock was in a reasonably safe condition, and the vessels were carefully navigated. *Held,* that the evidence was sufficient to sustain a finding that the defendant failed to exercise the care in attaching the tug to the barge and in navigating them which, as a common carrier, he owed to his passengers.

2. SAME—CONTRIBUTORY NEGLIGENCE.

The defendant's evidence tended to show that the barge was not crowded, and the passengers, especially the plaintiff, were warned not to go on the bow deck; that this deck was twice cleared of passengers, including the plaintiff, and the doors in a partition separating this deck

from the passenger deck were closed and hooked; that plaintiff was near the hawser, on the bow deck, watching it tighten and slack, and saw it loop when the tug turned; and that he was warned by a companion just before the accident. Plaintiff's testimony tended to contradict this evidence, and to show that when warned by his companion he tried to escape, but too late. *Held*, that plaintiff was not, as a matter of law, guilty of contributory negligence in being where he was, or in not exercising better judgment, under the circumstances, to avoid the injury.

**8. SAME—WEIGHT OF EVIDENCE.**

The evidence was sufficient to sustain a verdict in plaintiff's favor.

**4. SAME—LOSS OF LEG—EXCESSIVE DAMAGES.**

The plaintiff was 54 years old. Had been employed for 10 years· by a telegraph company, and at the time of the accident was a roundsman in charge of six or eight men. He had ·previously been in good health, and his work required him to be on his feet, and out in all kinds of weather. He was earning about $10 a week before his injury, and afterwards could earn only $5. *Held*, that a judgment of $11,500 was not excessive for the loss of a leg above the knee, compound fracture of the right arm, bruising of the head, ribs, and face, and cutting of the left hand.

Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by John T. Hill against John H. Starin. From a judgment in favor of plaintiff and an order denying a motion for a new trial made upon the minutes of the court, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Everett P. Wheeler, for appellant.
J. Arthur Corbin, for respondent.

LAUGHLIN, J. This is an action to recover damages for personal injuries alleged to have been caused by the.defendant's negligence. The case was submitted to the jury in a fair and impartial charge, to which no exception was taken. We are asked to set aside the verdict of the jury upon four grounds: (1) That plaintiff was guilty of contributory negligence; (2) that no negligence on the part of the defendant was shown; (3) that it is for excessive damages; and (4) that it is against the weight of evidence.

On the 4th of July, 1898, plaintiff was a passenger on the barge Robert Curry, which was towed by the tug Titan. It was a Salvation Army excursion from West Twenty-Second street to Long Island Sound. The fare for the round trip was 50 cents. The defendant controlled, operated, and navigated the tug and barge. Plaintiff paid his fare, obtained a ticket, and in company with a friend named Dillenberg went aboard the barge. The barge was 142 feet over all, 31 feet in width, and had two decks. Twelve feet and 4 inches from the bow a partition crossed the deck, and from that point to the stern the lower deck was inclosed. The upper deck did not extend in front of this partition. The deck was 27 feet in width at the line of this partition. The partition had two sliding doors, each 5 feet in width, leading from the inclosed deck to the open deck at the bow, which stood open, as claimed by plaintiff. This open deck in front of the partition was 10½ feet in length,

measured along the center line of the barge to the railing at the bow. About in the center of this open deck two beams, known as "bitts," projected several feet above the deck. To the right and left of these bitts, and within about a foot and a half of the railing at either side, there was an iron cleat 5 feet in length from end to end, running nearly parallel with the curving line of the rail opposite. Each of these iron cleats was attached to a block of wood 2 to 3 feet in length, extending along the deck under them, leaving at either end a projecting end of the cleat, 1 to 1½ feet in length. The tug was lashed to the barge, going down the North river, until after passing the Battery, when it was unlashed, and proceeded ahead, and was then attached to the barge by a hawser from 100 to 240 feet in length, which passed through a chock in the middle of the bow, and then diagonally to the cleat on the starboard side, 8 or 9 feet distant; a loop or spliced eye in the end of the hawser being thrown over the end of the cleat farthest from the bow, but without a hitch in the eye to prevent its coming off the cleat.

When the barge was going up the East river, and about opposite Twenty-Third street, plaintiff and his companion, who were on the lower deck, passed through one of these doors onto the bow, where they remained near the cleat to which the hawser was attached, and near or leaning against the rail, looking at the scenery, and watching the spray thrown into the bright sunlight by the hawser, which occasionally slackened, and sank into the water, and then suddenly became taut, as the speed of the tug lessened or increased.

The captain testified that the capacity of the barge was 900 passengers; that the benches would accommodate 700, and that there were between 600 and 700 people on board; but there was other evidence tending to show that there were about 800 passengers, that the barge was quite crowded, and that there were not sufficient seats to accommodate all the passengers. The captain and the mate testify that the bow was cleared of passengers off the Battery, again at the foot of Blackwell's Island, and again at the upper end of the island, and the doors closed and hooked. Their evidence also tended to show that the plaintiff was among those on the bow at the Battery, and that he in particular was warned while there and subsequently. Their testimony in this regard was denied by plaintiff, who in his denial was corroborated by other witnesses. Other evidence was given tending to show that the passengers were permitted to freely pass in and out on the bow, and that at the time of the accident there were from 15 to 50 people out there. The plaintiff and his companion testified that they had and heard no notice or warning that passengers were not permitted to go and remain upon the bow. There was evidence tending to show that as the barge was passing through Hell Gate, and about to turn into the Sound, the tide was at ebb, with a strong current, and the slackening of the hawser became more frequent. The tug turned nearly at right angles, making quite a loop in the hawser, and Dillenberg, seeing the hawser tearing its way up through the water, said to plaintiff, "Hill, I think this looks dangerous; I think

we had better go,"—whereupon he turned back, and jumped clear of the hawser, and plaintiff started to follow. As the hawser became taut, it tipped or heeled the barge over to starboard at such an angle that several passengers fell, and furniture slid along the deck, and the passengers on the bow were hanging back to the inclosed part of the deck, and about this time there was a noise, distinct and loud, described as a snapping or tearing, or as if something was splitting. The hawser had torn away the chock and the rail on the starboard side as far as the cleat, and had either parted outside the barge, or the loop had come off over the end of the cleat (there was positive testimony both that it broke and that it did not), and plaintiff's leg had become caught by the hawser, and instantly cut off at the knee, and carried many feet from the barge into the river, plaintiff falling upon the deck. Plaintiff offered other evidence tending to show that the hawser should have been shorter, and should have been attached to, or passed around, the bitts, or made secure by a hitch in the eye, so that it could not come off the cleat. The defendant gave evidence tending to show that the hawser was properly attached, that it did not break, that the chock was in a reasonably safe condition, and that the vessels were carefully navigated.

We are of the opinion that the evidence was sufficient to sustain a finding that defendant did not exercise that degree of care in attaching the tug to the barge and in navigating them that, as a common carrier, he owed to his passengers, and that it cannot be said as matter of law that plaintiff was negligent in being where he was, or in not exercising better judgment, under the circumstances, to avoid the injury. The plaintiff fairly sustained the burden of proof, and we would not be warranted in setting the verdict aside as against the weight of evidence.

It is urged that the verdict, which was $11,500, is excessive. Plaintiff was 54 years of age, had been born in England, and was a dry goods clerk in this country for 17 years, and then for 10 years in the employ of the American District Telegraph Company, where he had been advanced from the position of carrier to the position of roundsman, in charge of six or eight men, and with a prospect of further advancement. He had been in previous good health, and his work required him to be on his feet and out in all kinds of weather. He was earning from $9 to $10 per week. He has not been able to earn more than $5 a week since the accident, and is unable to do the character of work which formerly had been his business. The barge landed in the vicinity of Ninety-Fifth street, and the plaintiff was taken ashore, and placed in an ambulance, and taken to the Presbyterian Hospital, where his leg was amputated some distance above the point of injury. He was in the hospital for seven weeks, when, on account of the crowded condition of the hospital, he left, returning two or three times a week to have his injuries dressed. In addition to the loss of his leg, he sustained a compound fracture of his right arm above the wrist, and his head, ribs, and face were bruised, and his left hand was cut. He was obliged to return to the hospital, as his right

arm was paralyzed so that he could not use it at all. It was known as crutch paralysis, and he then remained in the hospital for treatment for two months. The doctors have prohibited his using a crutch under his right arm, and he is obliged to use a cane. There was necessarily much pain and suffering, and plaintiff is seriously disabled and crippled for life. There is but little that he can do, and his employment will rest almost wholly upon charity, and not upon his ability to earn money. The verdict seems large, but we cannot say that it is excessive.

The judgment and order should be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). The testimony is undisputed that this plaintiff voluntarily placed himself in a position which subjected him to danger if the towline parted or any of the apparatuses used in towing the boat gave way. There was a small space at the bow of this barge partitioned off, and it was here that the towline was fastened to the barge. It is true that there was a door which afforded access to this portion of the boat thus partitioned off, and that that door was not kept locked; but partitioning this portion of the barge from the rest of the boat, to which the passengers had access, was itself an indication that the portion of the boat partitioned off was used in a different manner than that of the rest of the barge. The danger to a person placing himself alongside of this rope, in case the rope should break, was apparent. It was not an intricate machine, or a situation which a person of ordinary intelligence could not appreciate; and when this plaintiff voluntarily placed himself in this position of danger, while there was plenty of room in the other portion of the boat, I think he voluntarily assumed the risk of such an accident as happened, and that his act relieved the defendant from liability.